Argued case for the day, 22-260 Flores v. Bergtraum Good morning, your honors. Good morning. Mr. Isaac, you've got three minutes reserved for rebuttal. You may begin when you're ready. Yes, I do, your honor. My name is Brian Isaac. Obviously, I represent the plaintiff appellant. Years ago, when we used to argue before the New York State Court of Appeals, Judge Kay, who was the chief judge at the time, would always ask the lawyers a question. She would say to them, what do you want us to hold in a sentence? And I always thought that that was a great idea because it focused what we want and it focuses the court on what we want. And it's a difficult question to answer, so I'd like to tell you what I'd like you to hold, and then I'd like to go into my argument if that's okay with you. I would like you to hold on this case that there was reversible error because, and I'm quoting, a medical analysis based in part on subjective range of motion tests may be sufficient if it is supported by other medical evidence such as MRI showing disc herniations and bulges. The district court, from my reading of the decision, faulted Dr. Cordiali's affidavit because he didn't distinguish between passive range of motion testing and active range of motion testing. I don't understand that to be exactly the correct description. The range of motion test doesn't tell you whether the source of the injury that restricts the range of motion is trauma or degeneration. And I understood that to be crucial to the decision here, that even if the range of motion is sufficiently restricted to amount to a serious injury, if it comes from degeneration and not from a trauma, then it wasn't caused by the automobile accident. That's a factual argument that is 100% correct. The problem here is that there's abundant evidence that the cause of the injuries that the plaintiff sustained was in fact traumatic in nature based upon medical evidence and based upon Dr. Cordiali's opinion. Let's go over that because that's important. Dr. Cordiali's opinion was discredited by the district court for being conclusory, for simply saying, I looked at all these things and I came to the conclusion that the cause of the injury was trauma. Well, let's look at the facts then. That is certainly what the district court held. We are here because we believe that the district court's decision is clearly erroneous. First, you have a plaintiff who is 32 years of age. You don't have an elderly patient at all. She was working. She was working 40 to 50 hours a week. There's no evidence that I can see in this record, Judge LaValle, that there was any preexisting symptomatology, any preexisting injury, or any post-accident injury. We also know that the MRIs showed… The MRIs showed degenerative disease. That's some evidence that there was a problem. Certainly, and my point on the degenerative disease is that degenerative disease isn't necessarily anything other than a lesion. I think, Judge Chin, there's a difference between a lesion and necessarily an injury. Let me take me, for example. I was an athlete when I was in school. If you look at my back, I have lesions all over my back, but I don't have any injury. So people have degenerative changes as they get older. Well, the MRIs also were interpreted to show that there was no evidence of trauma that would come from an accident. That's actually not correct, if I can. The 122118 MRIs about which you're speaking speak not only of herniated discs in C6, C7, and C4, C5, but it also uses the term straightening of the cervical lordosis consistent with severe spasm. Those are objective findings that are not degenerative in nature. Those are objective findings that are traumatic in nature. Plus, you also have the situation here that not only was the plaintiff not asymptomatic, but she never responded to a whole plethora of treatments. Now, we cited in our brief to a case called Tobin v. Spicel. It's a New York Court of Appeals case. I think it's an important case because it deals with New York law in this issue. And what that case holds, and I think I'm quoting it directly. I kind of memorized it. This is 64 New York 2nd. It's under workers' compensation law and New York tort law. An accident which activates a latent quiescent condition or aggravates a preexisting symptomatic condition is a cause of that injury as a matter of law. So here we have a plaintiff who objectively had no prior problems. The argument that was made by my adversary's expert was that she was a malingerer, but everything that she did in connection with this case showed that she actually wasn't a malingerer. She didn't stay out of work for three months. She went back to work in one day. She undertook a plethora of treatments, literally a year and a half of- that the plaintiff's problem does not interfere with her daily normal function. Correct, and it's true. She went back to work. She missed one day of work, went back to work despite the fact that she was in pain. That note corresponds with her testimony directly. Does that undercut the argument that there was a serious injury? Well, it might and it might not. I mean people go to work for all different reasons. The plaintiff here gave a reason as to why she went back to work, and it's a legitimate reason. She has a disabled son. She needed the money to support her family, and it seems to me at least with my definition and my understanding of what a malingerer is that a malingerer is someone who exaggerates or enhances an injury for purpose of a secondary gain to which he or she is not entitled. I don't think my client did that at all. But I understood the malingering opinion from the other side to be with respect to the range of motion testing. Correct. There's no response to that from your expert, and no express assessment that we can tell from this record as to whether he assessed for malingering. Fair to say? No, I don't think so. And if I can, I would cite you to the Linton v. Nuarez case, which was in the First Department and was affirmed by the New York highest court in New York, the New York Court of Appeals, where the court said that where an expert attributes an injury to a traumatic event by operation of fact and by operation of logic, he is rejecting a claim that this is a degenerative injury. So we have what the district court described as just a conclusory opinion as to causation. You say resolves the absence of any counter-expert testimony as to whether she's malingering? Yes. I mean, if you look at it, it's on page—obviously you have the record—it's on page 497 of the record. He attributes the injury to a traumatic cause. You have a young plaintiff. Linton was also a very, very young plaintiff with no history of any problems whatsoever. And it's kind of—my time is up. Is it okay if I go over? You may. Thank you. It's actually interesting. When I started 40 years ago, there was this case in the Second Department called Chaplain v. Taylor. It's a Second Department case. And what the courts there said is if a defendant refers to a radiographic test which shows a herniated disc, the defendant can't get summary judgment because it doesn't meet its prima facie burden. The courts have gone away from that because they recognize that you can have herniations that are symptomatic. You can have herniations that are asymptomatic. You can have herniations that are traumatically induced. You can have herniations that are just age degenerative—age degenerative produced. The key here is what was the plaintiff doing before? What was the plaintiff doing after? And where you have a diagnosis of an MRI, which is an objective test, where you have someone who had no prior symptomatology, where you have someone who I don't think meets the definition of malingerer as a matter of fact and as a matter of law, and where you have a history of failed treatment, it seems to me that the notion that she would get a cervical fusion surgery— I mean this is not just a discectomy. This is a fusion with a recommendation for a lumbar fusion, which is a very, very serious type of operation. It involves actually removing the nucleus pulposus and fusing the spine. That's something that is subject not to summary determination but to a determination that has to go to a jury. It's not like his decision was conclusory. He based it not only on his review of the medical records, his review of the MRIs, his review of the treatment records, his review of the failed medical treatment, the failed medical regimen, the failed drug regimen, but he also based it, if you look at 497, on what he saw when he did the surgery. He didn't explain any of that. He didn't cite anything that he saw in those tests that would rebut the proposition that it was degenerative, or caused by a degenerative condition rather than a trauma. It may very well be that he saw things that would be convincing, but he didn't put them in his report. He didn't explain them. Well, I think when you look at the report, Judge LaValle holistically, he's reviewing all of the medical records, and he's reviewing her prior lack of symptomatology. To say that a 32-year-old who had never had a problem, never had a prior injury, who suffers a direct-on contact with a vehicle where the treating physician specifically says that it's causally related, and he rules out other symptomatology by going over every single record, to us, that's sufficient to warrant the denial of sanction. And there's another point, which is that a comparison of the ROM tests of the two doctors gives substantial support to the proposition that there was blingering because the plaintiff exhibited a much bigger, like a substantially bigger range of motion when she was being tested by Dr. Cordiali than when she was being tested by the defendant's doctor. Well, there are two responses to that. First, that's a question of fact. But two, if you read our brief and you read Cordiali's opinion, he actually, I think, got this one right. The range of motion testing that he did over the 18 sessions in which he did the testing showed range of motion limitations that improve, that don't improve, that then improve again. Sometimes they're inconsistent. That's how people heal. That's Perle against Mayer from the Court of Appeals. People don't heal in a symmetric way. So his differences in his range of motion testing and the reticence of the plaintiff to undergo surgery and her reticence in also not undergoing certain treatment methodologies that were recommended, which is shown in my adversary's report. That, too, shows that this is not a case where summary judgment should be granted dismissing the plaintiff's case on motion, where there's nothing prior to this accident to indicate that she had any problem with her spine, which caused her any physical injury or disability. Thank you, Mr. Aslan. Thank you. We'll hear now from Mr. Sifante. May it please the Court, Dominic Sifante, I represent the defendant Bertram. I first wanted to address the 9180 claim, which hadn't been addressed on counsel's argument, because I think it's a pretty clear cut. The plaintiff only missed a day from work. She returned to work, and she continued to work in that job for over a year until she stopped when she had surgery. She had the same role for at least over six months. She continued to do her household chores. All that's evidence prima facie that within 90 out of 180 days following the accident, she was not limited from performing substantially all of her life activities. With regard to the permanent consequential limitation and the significant limitation prongs, defendants have more than one avenue of satisfying their burden of proof. One of them is by showing lack of proximate cause, which is really what we're dealing with with regard to the neck and lower back injuries here. Defendant's doctor, Dr. Brandoff, with regard to the cervical spine and the lumbar spine, reviewed the MRI reports, which showed findings of degeneration. While his examination did document those restrictions in range of motion, which he attributed to symptom magnification, the whole point of his report was that whatever her injuries were claimed were, were the result of a preexisting condition. The district court clearly reads the other side's expert as just conclusory as to the causation being trauma. Your expert, tell me why it's not comparably conclusive as to the cause being degenerative disease. Thank you, Your Honor. The defendant's expert performs an analysis of what the MRIs actually show, and it goes into the findings of degeneration that's showed in there, in both the three MRIs, two of the cervical, one of the lumbar. And in each of those studies, there's showings of degeneration, and also the defendants, Dr. Brandoff points out, that none of them show any signs of edema or ligamentous instability, and there's no nerve root encroachment shown on any of them. So with regard to your expert, I'm sorry. I was just going to, you know, the plaintiff's expert, or Dr. Cardioli, opines that the injuries are traumatic in origin, causally related to the motor vehicle incident, and I understand there are lots of good arguments as to why the conclusion is not a sound one, but why isn't this a question for the jury? Well, with regard to Dr. Cardioli's opinion, the major flaw is that he doesn't even address the findings of degeneration in the neck and the lower back. And counsel in an argument pointed out, he mentioned, you know, case law relating to an aggravation of a preexisting condition. But Dr. Cardioli doesn't say that. He doesn't review the lumbar and the findings for the neck and the lower back and say, hey, look, there's, you know, there's degeneration, but what you have here is an aggravation of a preexisting condition. Well, he doesn't make any, he just ignores it. And that's what renders his conclusion, his opinions, totally conclusory. He just pretends, he pretends it's not there. And the case was very clear when the defendant's prima facie, When defendant's doctor attributes the plaintiff's alleged injuries to a preexisting condition, the burden is shifted to the plaintiff's expert to address that and to explain why it's not related to a preexisting condition. And here, just Dr. Cardioli didn't make any attempt to do that. He just ignored it. He just said these are causally related, but he didn't go into why or distinguishing, you know, what in those MRIs, you know, how, you know, why the evidence of the MRIs that show degeneration of preexisting condition didn't apply here. Does your expert account for the age of the plaintiff and the absence, if you agree, absence of pre-accident evidence of the degeneration? He didn't, I mean, when it comes to age, everyone's a little different. You know, the MRIs kind of show what they show. Generally speaking, the older a person, the more degeneration they'll show. But young people can have degeneration too. It really depends on really not only how you live your life, but there's genetic factors as well. So the doctor doesn't directly address the plaintiff's age, but the MRIs show what they show. They show degeneration, you know. It doesn't really, the fact that she's younger, you know, doesn't render, isn't evidence that degeneration is traumatic. The MRIs show degeneration. I'd also like to point out that there was another prong to defendants' burden of proof on proximate cause here, and that was the accident reconstructionist, that there were two, essentially two portions of Dr. Gushue's analysis. First part of it was whether the type of impact that was involved could cause the type of loading pressures that could cause the injuries alleged, and then the second would be if there was such an impact, whether there was enough force. And so what you have here is you have the vehicle was at a stop about four feet in front of the plaintiff. The defendant took his foot off the brake, and the car rolled forward where the impact occurred. As Dr. Gushue in his report indicated, it was basically you're talking about a nominal speed, and the points of contact were the plaintiff's right lower extremity, at which point she fell, and she fell on her right side. So basically there's two traumas. The first is the contact in the right lower extremity. So just to put a framework on this, I think the district court described this opinion, but then doesn't include it in the analysis. And it seems to me either plaintiff has created a genuine issue material fact as to causation based on Dr. Cordiality's report and the documentation that formed the basis of it, or they haven't. And it's just not clear to me how much this plays in for purposes of our role now. I understand, Your Honor. We would argue there's not a lot of case law when it deals with accident reconstructions on serious injury thresholds, but we would argue that in addition to Dr. Brandhoff's defendant's doctor's opinion on causation, that the addition of the accident reconstructionist would also place a burden on the plaintiff to address that, to address those force factors, which he didn't do. Are there any other questions? I don't think so. Thank you. Thank you very much. Mr. Jackson. So, Your Honor, if I understand my adversaries' position, and I'm just giving a hypothetical to explain my position. If a 21-year-old who never was hurt at all gets into an accident, brings a case, has the exact same findings as this person, that 21-year-old, despite the fact they never had an issue at all, can lose the case on summary judgment, not at trial, where a defendant doctor says that that 21-year-old doesn't have degeneration at all but has some degenerative condition. Unless I'm reading Linton wrong, I think the Court of Appeals reject it. I'm reading from what the First Department held, not Brian Isaac. This is the First Department in a case affirmed by the Court of Appeals. Defendant's sole competent evidence in favor of summary judgment was a doctor's opinion that plaintiff's injuries preexisted the accident. Plaintiff submitted the affirmation of a treating physician, just like I did, based on a physical examination performed within the days of the accident. I have tons of physical examinations and a surgery, opining that the injuries were caused by the accident. There is no basis on this record to afford more weight to defendant's expert's opinion, and there are no, quote, magic words, close quote, which plaintiff's expert was required to utter to create an issue of fact. If anything, plaintiff's expert's opinion is entitled to more weight. That's page 443. That's this case. And as to the accident reconstruction expert, the district court was smart not to deal with it, because there were two cases that we cited which were not refuted by my adversary, Duffberg against Laubach and Imran against Yemeni, would say that that type of accident reconstruction without any scientific basis or any proof as to the angulation is not admissible evidence itself. So I would ask you to take a look at the Linton case, and before I sit down, I would point out that his expert made no reference whatsoever to age or lack of preexisting symptomatology, and a deficiency in the afterdates of both experts has to cut against the move-in, because it's the move-in who has the affirmative obligation to secure summary judgment in the first instance. All right. Thank you, counsel. I'll take the matter under advisement. It is submitted. All four cases on today's calendar are submitted. And I'll ask the clerk to adjourn.